**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PARTNERSHIP FOR THE ADVANCEMENT OF NEW AMERICANS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOSEPH B. EDLOW, in his official capacity as Director of U.S. Citizenship and Immigration Services, *et al.*,<br><br>*Defendants*. | Case No. |

**CERTIFICATION OF BASIS FOR RELATED CASE**

Pursuant to Local Rule 40.1(g)(1), Plaintiffs, by and through undersigned counsel, respectfully submit this certification in support of relating the above-mentioned case to *Jean A. et al. v. Noem et al.*, No. 26-cv-30031-RGS (D. Mass.), currently pending before Judge Richard G. Stearns. As a basis for the designation, Plaintiffs state as follows:

1. Local Rule 40.1(g)(1) provides that "a civil case shall be deemed related to another civil case only if: (A) some or all of the parties are the same; and (B) one or more of the following similarities exist: i. the cases involve the same or substantially similar issues of facts; ii. the cases arise out of the same occurrence…" L.R. 40.1(g)(1)(A)-(B). Both prongs are satisfied in this case.

2. The first prong of L.R. 40.1(g)(1) is clearly satisfied, as both cases share multiple plaintiffs and defendants. The International Institute of New England ("IINE") and the Jewish Family Service of Western Massachusetts ("JFS-WMA") are organizational plaintiffs in both actions; as nonprofits serving resettled refugees, they are experiencing similar harms from the government's new policies targeting refugees for re-vetting, holding adjudication of refugees' adjustment of status, and threatening refugees with detention, with the ultimate

purpose of terminating refugee status and deporting refugees. Furthermore, individual plaintiffs are unadjusted refugees subject to both the policies challenged in this action and in *Jean A*. Indeed, individual plaintiffs in this case, *PANA v. Edlow*, are protected by the current injunction in *Jean A.*, which prevents unadjusted refugees from being detained solely on the basis that they have not yet adjusted status. Similarly, defendants are virtually the same in both actions, except that the Immigration and Customs Enforcement defendants in *Jean A.* are not defendants in *PANA*.

3. As for the second prong, the two complaints arise from the same nucleus of facts: the policies put forth by the Department of Homeland Security and its components to undermine, block and ultimately undo the stability of refugees through mass detention of unadjusted refugees (*Jean A.*) and mass re-vetting, blanket holds on adjustment of status, and termination of refugee status (*PANA*). *Jean A. et al. v. Noem et al.*, No. 26-cv-30031-RGS, Dkt. 1 ¶¶ 3-8, 84-109; Dkt. 1 ¶¶ 1-7, 49-72, 83-104. Both actions originate from the core principles set forth in the November 21, 2025 memorandum issued by Defendant Joseph Edlow, the Director of United States Citizenship and Immigration Services ("USCIS") ("November 2025 Memo"). *Jean A.*, No. 26-cv-30031-RGS, Dkt. 1 ¶ 90; Dkt. 1 ¶¶ 2, 21, 58-82. The November 2025 Memo directed the agency to immediately and indefinitely hold all pending applications for adjustment of status filed by refugees admitted during the Biden Administration (the "Adjustment of Status Hold"), while simultaneously directing the review and potential re-interview of all such refugees (the "Re-vetting Policy"). Dkt. 1 ¶¶ 2, 21, 58-68. The November 2025 Memo also provided the basis for the policy of mass detention of unadjusted refugees (the "Refugee Detention Policy") challenged in *Jean A. Jean A.*, No. 26-cv-30031-RGS, Dkt. 1 ¶¶ 90, 106.

4. While *Jean A.* does not challenge the November 2025 Memo directly, the Refugee Detention Policy challenged in that litigation relies on refugees' unadjusted status to justify mass detention. *Id*. It is thus intrinsically related to the Re-vetting Policy and Adjustment of Status Hold challenged here, which aim to ensure that refugees remain unadjusted and/or

become subject to speedy termination of status. In practice, as demonstrated during the implementation of Operation PARRIS, the program of refugee detention piloted in Minnesota in early 2026, the Refugee Detention Policy and the Re-vetting Policy and Adjustment of Status Holds operate in tandem; during Operation PARRIS, the Trump Administration targeted unadjusted refugees, including *PANA* Plaintiff Abdi B., for arrest and subjected them to custodial interviews in detention to interrogate them about the basis for their refugee claims with the ultimate goal of terminating their status. Dkt. 1 ¶¶ 85-90, 104, 120. Thus, although the two cases target different aspects of the implementation of the policy to destabilize resettled refugees, there is significant overlap between the factual and policy bases at the heart of both actions. *See Conservation Law Found. v. Massachusetts Water Resources Auth.*, No. 1:22-cv-10626, Dkt. 21 at 5 (D. Mass. Jan 30, 2023) (relating two cases concerning compliance with environmental permits and the Clean Water Act, even though the most recent case dealt with a more specific compliance issue, and the earlier case was significantly older).

5. In addition, the Interim Final Rule challenged in *PANA* makes explicit that its goals are closely intertwined with the goals of the Refugee Detention Policy challenged in *Jean A*. *See Removing 30-Day Refugee Termination Notice*, 91 Fed. Reg. 65,077 (Oct. 14, 2026) (amending 8 C.F.R. § 207.9) ("Refugee Status Termination IFR" or "IFR"); Dkt. 1 ¶ 93. The background section of the IFR states that all these policies are "similarly aimed" at re-vetting and detaining refugees and are therefore interconnected. 91 Fed. Reg. at 65,079. The IFR goes on to discuss the February 18, 2026 memo by USCIS and ICE (the "Refugee Detention Memo") that laid out the claimed justifications for detaining lawfully admitted refugees merely because they had not yet adjusted their status to lawful permanent residents. *Id*. Further, the IFR references Operation PARRIS as a crucial framework, describing it as a "sweeping initiative first centered in Minnesota to reexamine thousands of refugee cases through new background checks and intensive verification of refugee claims" that led to the issuance of Notices of Intent to Terminate refugee status, all justified

by the purported "risks created by deficient vetting." *Id.* at 65,084-85. These purported risks also provide the justification for the Refugee Detention Memo. *Jean A.*, No. 26-cv-30031-RGS, Dkt. 1 ¶ 106.

6. The legal questions in both cases also have significant overlap. Both lawsuits are challenges to agency action under the APA, and at stake in both suits is the meaning of 8 U.S.C. § 1159, which regulates the adjustment of status of refugees. The legal issues presented in both complaints deal with the scope, reach, and meaning of refugee adjustment and the Administration's reversal of decades of practice and interpretation of § 1159. Relating the instant case to *Jean A.* will enable consistent interpretation of the same statutory and regulatory language, avoid divergent judicial interpretations of a single statutory provision, and provide consistent direction to the same federal officers and agencies. *See Conservation Law Found.*, Dkt. 21 at 6 (allowing relation because, without it, "this Court would run the risk of issuing inconsistent decisions").

7. Further, both lawsuits include constitutional challenges rooted in the Due Process Clause of the Fifth Amendment. Refugees challenge the deprivation of their due process rights through unlawful detention in *Jean A.* and through the elimination of a meaningful ability to challenge the loss of their refugee status in *PANA*. Both policies are predicated on the Administration's purported beliefs about irregularities in the admission of refugees during the Biden administration. *Jean A.*, No. 26-cv-30031-RGS, Dkt. 1 ¶ 106; Dkt. 1 ¶¶ 2, 93.

8. Lastly, refugee processing is a discrete and specialized area of immigration law, and this Court is already familiar with the particularities of refugee admissions and adjustment of status through the *Jean A.* briefing. Given that the claims here arise from the same nucleus of facts and similar legal questions as those in *Jean A.*, relating them will best preserve judicial resources, ensure administrative efficiency, and minimize the risk of inconsistent factual findings, judgments, or remedies on closely related issues. *See Bailey v. Dart Container Corp.*, 980 F. Supp. 584, 590 n.11 (D. Mass. 1997) ("The related case rule

enhances the administration of the court by avoiding piecemeal litigation and minimizing the occurrence of inconsistent decisions.”).

Therefore, pursuant to Local Rule 40.1(g), the above-captioned matter should be designated as a related civil case to *Jean A. et al. v. Noem et al.*, No. 26-cv-30031-RGS (D. Mass.).

Dated: October 26, 2026

Respectfully submitted,

*/s/ Erez Reuveni*
Erez Reuveni (MA BBO No. 666769)
Jennie L. Kneedler* (DC Bar No. 500261)
Cynthia Liao* (DC Bar No. 90036947)
Steven Y. Bressler* (DC Bar No. 482492)
Robin F. Thurston* (DC Bar No. 1531399)
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
ereuveni@democracyforward.org
jkneedler@democracyforward.org
cliao@democracyforward.org
sbressler@democracyforward.org
rthurston@democracyforward.org

Hussein Elbakri* (NY Bar No. 5712666)
Guadalupe Aguirre* (NY Bar 5536107)
Kimberly Grano* (NY Bar No. 5858808)
Ghita Schwarz* (NY Bar No. 3030087)
Pedro Sepulveda* (NY Bar No. 6198550)

**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Plaza, 33rd floor
New York, New York 10004
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
helbakri@refugeerights.org
laguirre@refugeerights.org
kgrano@refugeerights.org
gschwarz@refugeerights.org
psepulveda@refugeerights.org

Dalia Fuleihan* (IL Bar No. 6335082)
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
P.O. Box 47611
Chicago, IL 60647
Telephone: (646) 740-6271
Facsimile: (516) 324-2267
dfuleihan@refugeerights.org

John Nathanson (NY Bar No. 2630697)*
Andrew Tannenbaum (NY Bar No. 3940434)*
Leila Siddiky (NY Bar No. 5225164)*
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Avenue
New York, NY 10022
212-848-4000
john.nathanson@aoshearman.com
andrew.tannenbaum@aoshearman.com
leila.siddiky@aoshearman.com

Emily Westridge Black (TX Bar No. 24060815)*
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 West 6th Street
Austin, TX 78701
512-647-1909
emily.westridgeblack@aoshearman.com

Gideon J. Duke-Cohan (MA BBO# 716358)
**ALLEN OVERY SHEARMAN STERLING US LLP**
One Beacon Street
Boston, MA 02108
212-610-6353
gideon.duke-cohan@aoshearman.com

*Counsel for All Plaintiffs*

* Motion to appear *pro hac vice* forthcoming