# EXHIBIT 12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

PARTNERSHIP FOR THE ADVANCEMENT OF NEW AMERICANS, *et al.*,

*Plaintiffs*,

v.

JOSEPH B. EDLOW, in his official capacity as Director of United States Citizenship and Immigration Services, *et al.*,

*Defendants*.

Case No.

**DECLARATION OF SARAH KRIEGER**

I, Sarah Krieger, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am an attorney at the National Immigration Law Center (NILC). I have extensive experience working in immigration law and public benefits, beginning in 2014 through the present. This includes experience in the federal government, at the Department of Justice and various offices in the Department of Homeland Security. These experiences included work in the Refugee and Asylum International Operations (RAIO) directorate, the Administrative Appeals Office, and the Office of Policy and Strategy. My work from 2016 to 2025 focused on humanitarian immigrants, including their eligibility for public benefits. Since 2025, my work at NILC focuses on policies and laws that affect immigrant access to health care, food assistance, housing, and other benefits.

2. Founded in 1979, NILC focuses on the laws and policies affecting access to health care and other critical services for low-income immigrants and their families. NILC's staff has unique expertise in the intersection of immigration and public benefits laws. For decades, NILC has analyzed federal and state policies that restrict or expand immigrants' access to public benefits and other supports, advised advocates and service providers on complex immigrant-eligibility rules, and developed public-facing resources for immigrant communities. Through this work, NILC has developed substantial knowledge of how federal and state benefit eligibility operates in practice, and how changes to those rules affect immigrants and their families.

3. In this declaration, we describe the federal benefit eligibility framework that applies to refugees, the changes H.R. 1 enacted, the limited assistance that remains available, and the resulting gaps in support for refugees who have not yet adjusted to lawful permanent resident (LPR) status.

4. Eligibility for federal programs and benefits depends on a person's immigration status, personal characteristics, and in some programs, the state in which the person lives.[1] The Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA) of 1996 limited access to federal public benefit programs for many lawfully residing immigrants, subject to certain exceptions. PRWORA created a "qualified" immigrant eligibility category, which includes LPRs, refugees, asylees, Cuban and Haitian entrants, certain survivors of domestic violence and trafficking, and other enumerated groups.[2] Being a "qualified" immigrant, however, does not mean that an individual is eligible for a given benefit.

---

[1] *See, e.g.*, Nat'l Immigr. L. Ctr., *Overview of Immigrant Eligibility for Federal Programs* (last updated Oct. 6, 2026), https://www.nilc.org/resources/overview-immeligfedprograms/.

[2] *See* 8 U.S.C. § 1641.

5. Under PRWORA, many "qualified" immigrants faced eligibility restrictions depending on their status and when they entered the United States. Many immigrants who entered the country on or after August 22, 1996, were barred from receiving "federal means-tested public benefits" during the five years after they obtained their "qualified" status. This waiting period is often referred to as the five-year bar. Federal agencies have clarified that the "federal means-tested public benefits" are Medicaid (except for emergency services), the Children's Health Insurance Program (CHIP), Temporary Assistance for Needy Families (TANF), the Supplemental Nutrition Assistance Program (SNAP), and Supplemental Security Income (SSI).[3]

6. Congress exempted refugees and certain other humanitarian immigrants from the five-year bar, because it recognized that imposing such a wait on these vulnerable groups would leave them without essential supports. Therefore, after the passage of PRWORA and until 2025, refugees were eligible for many Federal public benefits, including the Supplemental Nutrition Assistance Program (SNAP), Medicaid, and the Children's Health Insurance Program (CHIP) without a waiting period. Their exemption from the waiting period continued even if they adjusted to lawful permanent resident status.

---

[3] HHS, Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA); Interpretation of 'Federal Means-Tested Public Benefit,' 62 Fed. Reg. 45256 (Aug. 26, 1997); U.S. Dept. of Agriculture (USDA), Federal Means Tested Public Benefits, 63 Fed. Reg. 36653 (July 7, 1998). The CHIP program, created after PRWORA, was later designated as a federal means-tested public benefit program. *See* Health Care Financing Administration, "The Administration's Response to Questions about the State Child Health Insurance Program," Question 19(a) (Sep. 11, 1997). For more information on additional restrictions on immigrant eligibility for SSI, *see* Nat'l Immigr. L. Ctr., *Overview of Immigrant Eligibility for Federal Programs* (last updated Apr. 25, 2024), https://www.nilc.org/wp-content/uploads/2024/04/tbl1_ovrvw-fed-pgms-rev-2024-04-1.pdf.

7. A broader group of "lawfully present" individuals, including refugees, have been able to enroll in Medicare without a waiting period, if otherwise eligible. And under the Affordable Care Act (ACA),[4] lawfully present individuals have been able to purchase health coverage and, depending on their income, secure premium tax credits that make the coverage more affordable.

8. In 2025, Congress passed H.R. 1,[5] which significantly restricted federal funding for SNAP, Medicaid, CHIP, Medicare and ACA premium tax credits for several groups of "humanitarian" immigrants, including refugees. The SNAP restrictions have gone into effect for new applicants and for current recipients at recertification; the Medicaid/CHIP provisions became effective October 1, 2026; the Medicare restrictions will become effective February 1, 2027; and the restrictions on premium tax credits will take effect beginning January 1, 2027. Once all relevant provisions of H.R. 1 take effect, the only immigrant groups that will remain eligible for those benefits are LPRs, Cuban-Haitian entrants, and people residing in the United States under a Compact of Free Association. For Medicaid and CHIP, an exception applies in states that adopt the option to use federal Medicaid and CHIP funds to cover lawfully residing immigrant children and pregnant people without a five-year waiting period.

9. H.R. 1 effectively stripped refugees of eligibility for SNAP, Medicaid, CHIP, Medicare and premium tax credits.[6] After its enactment, there was significant confusion about whether individuals who previously held a status that made them exempt from the five-year bar would continue to be exempt after adjusting to LPR status. H.R. 1 did *not* revise the five-year bar

---

[4] Patient Protection and Affordable Care Act, Public Law 111-148; Health Care and Education Reconciliation Act of 2010, Public Law 111-152.
[5] Public Law 119-21, also known as the One Big Beautiful Bill Act of 2025.
[6] *See* P.L. 119-21, secs. 10108, 71109, 71201, 71301.

provisions of PRWORA; indeed, federal agencies have confirmed this in writing. On December 9, 2025, after 21 states and the District of Columbia filed a complaint, the U.S. Department of Agriculture clarified that refugees and other exempt humanitarian grumps are not subject to the 5-year waiting period after they adjust to LPR status.[7] On April 8, 2026, the U.S. Department of Health and Human Services (HHS), Centers for Medicare and Medicaid Services, issued a letter similarly clarifying that H.R.1 does not change how the 5-year waiting period applies.[8] Thus, refugees who have not yet adjusted to LPR status are ineligible for many vital supports, while refugees who adjust to LPR status can receive these benefits immediately without a waiting period, if otherwise eligible.

10. Refugees also have been impacted by recent changes to eligibility for Refugee Cash Assistance (RCA) and Refugee Medical Assistance (RMA). RCA provides cash assistance to help individuals meet basic needs while RMA provides short-term medical coverage to refugees who are ineligible for Medicaid.[9] Until recently, RCA and RMA lasted for four months after a refugee's admission into the United States. On July 14, 2026, the Office of Refugee Resettlement (ORR) within HHS published a Federal Register notice extending the eligibility period for RCA and RMA from four months to eight months.[10] On October 1, 2026, ORR published a Federal Register notice again extending the eligibility period for RCA and RMA,

---

[7] U.S. Dep't of Agric., Food, Nutrition, & Consumer Servs., *Supplemental Nutrition Assistance Program (SNAP) Provisions of the One Big Beautiful Bill – Alien SNAP Eligibility – Question and Answer #1 REVISED* (Dec. 9, 2025), https://www.usda.gov/sites/default/files/guidance-documents/fns.snap-obbb-alien-eligibility-qas1.pdf; *see also State of New York v. Rollins*, 6:25-cv-02186 (D.Or. Sep. 28, 2025).
[8] Dep't of Health & Human Servs., Ctrs. For Medicare & Medicaid Servs., *RE: Implementation of Section 71109 "Alien Medicaid Eligibility" of the Working Families Tax Cut Legislation (Public Law 119-21)* (Apr. 8, 2026), https://www.medicaid.gov/federal-policy-guidance/downloads/sho26001.pdf.
[9] U.S. Dep't of Health & Human Servs., Off. of Refugee Resettlement, *Cash & Medical Assistance* (updated Oct. 13, 2026), https://acf.gov/orr/programs-services/refugees/cma.
[10] 91 Fed. Reg. 43107 (July 14, 2026), available at https://www.federalregister.gov/documents/2026/07/14/2026-14095/federal-register-notice-change-in-eligibility-period-for-refugee-cash-assistance-and-refugee-medical

this time from eight months to twelve months.[11] These extensions apply only to those refugees who entered the United States after January 1, 2026. Even with these extensions, however, refugees are eligible for these programs for only 12 months. Once they reach this 1-year period, they lose access to health coverage unless and until they become an LPR.

11. NILC regularly tracks state policies that offer assistance to immigrants who are ineligible for federal programs, and that take advantage of federal options to cover children and pregnant people. Some states provide state-funded coverage or benefits that partially address the gaps H.R. 1 created. These programs are not available in every state and, where available, may provide only temporary or limited assistance, and may be subject to annual state budgetary negotiations. For example, only 6 states offer nutrition assistance to some individuals who do not qualify for SNAP, but of these, only three or four currently provide this assistance to refugees.[12] Thirty-seven states and D.C. provide Medicaid/CHIP to lawfully residing children, regardless of their date of entry, and 14 states plus D.C. provide medical coverage to children, regardless of immigration status.[13] Thirty-four states provide Medicaid for lawfully residing pregnant people, regardless of their date of entry, and 26 states and D.C. provide CHIP or state-funded prenatal care to pregnant immigrants, regardless of their immigration status.[14] However, only about 6 states offer coverage to some or all non-pregnant adults, including refugees, who were rendered ineligible for Medicaid by H.R. 1.

---

[11] 91 Fed. Reg. 62534 (Oct. 1, 2026), available at https://www.federalregister.gov/documents/2026/10/01/2026-20111/period-for-refugee-cash-assistance-and-refugee-medical-assistance-correction.

[12] Nat'l Immigr. L. Ctr., *State-Funded Food Assistance Programs (Table)* (Aug. 18, 2026), https://www.nilc.org/resources/state_food/.

[13] Nat'l Immigr. L. Ctr., *Medical Assistance Programs for Immigrants in Various States (Table)* (last updated Aug. 24, 2026), https://www.nilc.org/resources/medical-assistance-various-states/.

[14] *Id.*

12. As a result, refugees who have not adjusted to LPR status are not eligible for or will soon become ineligible for several essential federal benefit programs. They may have only limited, temporary assistance available through RMA, or state-funded programs. For refugees, access to the federal programs discussed above depends on their ability to adjust to LPR status. They are not eligible to apply until they have had refugee status for at least a year, and a pause in processing their application could leave them without critical services for many months, or even years. During the period before adjustment, these refugees lack access to vital government programs that offer health coverage and food assistance.

I declare the foregoing is true to the best of my knowledge and belief.

Executed in Washington, District of Columbia, on October 24, 2026

Sarah Krieger

Sarah Krieger