# EXHIBIT 13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PARTNERSHIP FOR THE ADVANCEMENT OF NEW AMERICANS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOSEPH B. EDLOW, in his official capacity as Director of United States Citizenship and Immigration Services, *et al.*,<br><br>*Defendants*. | Case No. |

**DECLARATION OF ALLEGRA MARISOL DROBNICK**

I, Allegra Marisol Drobnick, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a U.S. citizen and over the age of 18. I currently reside in Minnesota. I make this declaration to provide information about the current practice of refugee interviews and re-vetting as well as a recent issuance of a Notice of Intent to Terminate ("NOIT"). That NOIT was issued immediately after the Department of Homeland Security ("DHS) issued a new Interim Final Rule that shortens the time refugees have to respond to the proposed termination of refugee status from thirty days to ten days.

2. I am a Department of Justice Partially-Accredited Representative and Immigration Legal Services Program Manager at a nonprofit organization in Minnesota. Under 8 C.F.R. 1292.1(a)(4), non-attorney representatives like me are allowed to represent noncitizens in

affirmative immigration matters before the Department of Homeland Security. This program, administered by the Executive Office of Immigration Review, aims to expand access to qualified immigration legal representation for vulnerable noncitizen populations. My initial accreditation was approved on July 1, 2021. I was approved for re-accreditation on December 1, 2024. My current accreditation expires on November 30, 2027, subject to renewal.

3. To date, I have represented refugee clients in more than 1,300 individual benefit applications before U.S. Citizenship and Immigration Services ("USCIS"). As an employee of a refugee resettlement agency, refugee adjustment of status is my primary discipline.

4. Prior to January, 2026, refugees called for adjustment of status interviews were provided with written notice about 30-45 days in advance. The notice they received detailed all the important elements for interview preparation, including required documents, eligibility for interpretation services, how to request certain accommodations, and how to request a reschedule of the appointment. Many of my clients have relied on interpreters and other accommodations in these interviews.

5. That process changed in January, 2026, with the launch of Operation PARRIS in Minnesota, targeting 5,600 refugees in Minnesota who had not yet obtained green cards for "re-vetting." I began learning about refugees who had been arrested and soon began receiving calls from my own refugee clients who had been detained, some of whom had been flown from Minnesota to Houston, Texas, where DHS officers were interviewing them for hours about their refugee status without notice or opportunity to prepare. Some 15 clients of mine were detained and interviewed while in detention until a district court in Minnesota issued a temporary restraining order barring these arrests

6. Thereafter, many of my and my colleagues' clients began receiving "Call-In" notices to appear for a "Post-Admission Refugee Re-Verification" at the USCIS Saint Paul-Minneapolis Field Office. These notices gave no information about why the refugee's case had been flagged for re-verification, some issued with as few as 2 days' notice. It was impossible for us to gather evidence, find qualified interpreters, and arrange transportation on such short notice. Nearly every week, I would have multiple refugee clients scheduled for interviews at the same time, making in-person legal representation impossible at these interviews.

7. On October 20, 2026, my refugee client presented at my office with a NOIT. The NOIT had been issued by USCIS on October 15, 2026, and delivered to my refugee client on October 19, 2026 via United Parcel Service.

8. The NOIT stated that it appeared my client had not met the definition of refugee at the time of admission to the United States, and that my client had "ten (10) days from the date of this notice to offer written or oral testimony in support of [their] refugee claim and in opposition to the proposed termination." The NOIT stated that if my client chose to provide an oral interview, an interview would have to be scheduled within the ten-day period. The NOIT further stated that "[l]ack of response within the time allotted will result in the termination of [my client's] refugee status," loss of work authorization, and placement in removal proceedings.

9. Because the NOIT was not delivered to my client until October 19, and a response was due by October 25, my client has had only six days to prepare a response, an extraordinarily short time to mount an effective defense.

I declare the foregoing is true to the best of my knowledge and belief.

Executed in Richfield, Minnesota on October 23, 2026

Allegra Marisol Drobnick

Allegra Marisol Drobnick