**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

PARTNERSHIP FOR THE ADVANCEMENT OF NEW AMERICANS, *et al.*,

*Plaintiffs*,

v.

JOSEPH B. EDLOW, in his official capacity as Director of U.S. Citizenship and Immigration Services, *et al.*,

*Defendants*.

Case No. 1:26-cv-14817

**MEMORANDUM OF LAW IN SUPPORT OF INDIVIDUAL PLAINTIFFS' MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYMS**

# TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 3

I. Individual Plaintiffs merit a grant of pseudonymity. ........ 4

A. Pseudonymity is necessary because Individual Plaintiffs face unusually severe harm. ........ 4

B. Identifying Plaintiffs would expose innocent non-parties to severe harm. ........ 7

C. Identifying Individual Plaintiffs would chill future litigants. ........ 7

D. Public identification would expose information protected by law. ........ 8

II. Pseudonymity poses no threat of unfairness to Defendants. ........ 9

III. The public interest is fully served without disclosure of Plaintiffs' identities. ........ 9

CONCLUSION ........ 11

## INTRODUCTION

Individual Plaintiffs, Lida A., Abdi B., Julio C., and Firas D. are lawfully admitted refugees who have not yet obtained lawful permanent resident or "green card" status. They seek to shield from the public their own identities, as well as the identities of family members who may be identified through Individual Plaintiffs' participation in this lawsuit, because they are already targets of Defendants' policy of re-vetting refugees and freezing processing on their adjustment of status applications, and because they fear receiving notices of intent to terminate their refugee status with only ten days to respond, and denial of their applications for adjustment of status.[1] The Court should grant this Motion for leave to proceed under pseudonyms pursuant to its inherent authority and Fed. R. Civ. P. 5.2(d).

With this motion, Plaintiffs are contemporaneously filing: (1) a class action complaint; (2) a motion for class certification; and (3) a motion for an administrative stay and for a stay of agency action under 5 U.S.C. § 705. Plaintiffs' lawsuit challenges Defendants' policies that subject individuals lawfully admitted to the United States as refugees to (1) an indefinite hold on their applications for adjustment of status and mass re-vetting of their admission as refugees and (2) termination of their refugee status without adequate notice. Taken together, these policies prevent at least 100,000 refugees from obtaining lawful permanent resident status—a status they are statutorily entitled to after one year of physical presence in the United States—and place them at risk of termination of their refugee status with no meaningful opportunity to be heard. In support of this motion and the other motions described above, Individual Plaintiffs are providing declarations recounting their experiences and describing ongoing fears and hardships arising from Defendants' conduct.

The Court should grant Individual Plaintiffs' motion. First, Individual Plaintiffs meet the requirements to proceed in their lawsuit pseudonymously. The sensitive nature of this action and

[1] Plaintiffs propose to enter into negotiations with Defendants for a Protective Order that would shield Plaintiffs' identities from any government employees who may have influence or authority over the pending immigration benefit applications or detention of Plaintiffs or their families.

the high risk of harm that Individual Plaintiffs will likely face if their identities are publicly revealed demonstrate the need for confidentiality, which far outweighs any countervailing interest in the public disclosure of their identities. Second, Individual Plaintiffs have made a strong showing that protecting their identifying information is necessary, narrowly tailored, and consistent with the interests of justice. Individual Plaintiffs therefore respectfully request that the Court grant them leave to proceed under pseudonyms, and to file unredacted versions of certain materials under seal, only once an appropriate protective order has been entered.

**BACKGROUND**

Plaintiffs' lawsuit challenges Defendants' policies to deprive refugees of their right to adjustment of status and rapidly strip them of their refugee status. On November 21, 2025, Defendant Joseph Edlow, the Director of United States Citizenship and Immigration Services ("USCIS"), issued internal policy guidance directing USCIS to immediately and indefinitely hold all pending applications for lawful permanent residence filed by refugees admitted during the Biden Administration (the "Adjustment of Status Hold"), while simultaneously directing the review and potential re-interview of all such refugees (the "Re-vetting Policy"). Joseph B. Edlow, *Reinterview of Certain Refugees Admitted to the United States and an Immediate Hold on Certain Refugees with a Pending I-485 Application to Register Permanent Residence or Adjust Status* at 3 (Nov. 21, 2025) (Dkt. 1-4).

For nearly a year, Defendants have engaged in numerous actions targeting lawfully admitted refugees and seeking to strip them of their lawful status. Most recently, on October 14, 2026, the Department of Homeland Security ("DHS") issued, without notice and comment, an interim final rule ("IFR") upending longstanding regulations governing the termination of refugee status. The IFR reduces the amount of time for refugees to respond to a notice of intent to terminate ("NOIT") their refugee status from 30 days to 10 days. This rule went into effect the same day. *Removing 30-Day Refugee Termination Notice*, 91 Fed. Reg. 65,077 (Oct. 14, 2026).

Individual Plaintiffs and their family members, all unadjusted refugees, credibly fear denial of their applications for adjustment of status, rapid termination of their refugee status, detention,

removal proceedings, and ultimately removal to their country of origin where they face persecution. Each faces material risk that disclosure of identity-revealing information will increase the likelihood that their cases will be selected for termination of status and detention or removal. Such identity-revealing information includes, but is not limited to, Plaintiffs' names; biographical, contact, or immigration-related details; the fact of any individual's participation in this lawsuit or connection to the claims asserted; and any other information that could reasonably be used—alone or in combination with other data—to identify or locate a Plaintiff (or their family members) or to associate them with this action ("Protected Information").

Given the very real risk of retaliation by the same government actors Plaintiffs are suing—actors who possess the authority to strip them of status, deny their applications for immigration benefits, detain, mistreat, and ultimately deport them—Individual Plaintiffs seek to prevent their Protected Information from falling into the hands of any officials, employees, agents, contractors, or representatives of Immigration and Customs Enforcement ("ICE"), USCIS, DHS (including any DHS component), or any other individuals involved in immigration enforcement, investigation, detention, or related actions, or from learning their identities through public filings.

Requiring Individual Plaintiffs to disclose their identities or to publicly file sensitive information that could lead to their exposure before any protective order is entered, also could irreparably harm vulnerable and brave refugees who have come forward to vindicate their rights and the rights of others.

## ARGUMENT

Pseudonymity is appropriate because Individual Plaintiffs' claims raise sensitive, personal issues related to their refugee status; because they are challenging government action and face retaliatory harm; because Individual Plaintiffs' claims address legal issues that do not require exposure of their identities at this stage; and because their proceeding in this action to vindicate their rights is in the public interest.

**I. Individual Plaintiffs merit a grant of pseudonymity.**

The general rule is that complaints state the names of the parties. *See* Fed. R. Civ. P. 10(a). In the First Circuit, however, district courts are instructed to evaluate the "totality of the circumstances" to judge whether litigants fall into one or more of the "four general categories of exceptional cases in which party anonymity ordinarily will be warranted," including: (1) cases where "a would-be Doe … reasonably fears that coming out of the shadows will cause him unusually severe harm (either physical or psychological)"; (2) "cases in which identifying the would-be Doe would harm 'innocent non-parties'"; (3) "cases in which anonymity is necessary to forestall a chilling effect on future litigants who may be similarly situated"; and (4) "suits that are bound up with a prior proceeding made confidential by law." *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 70-71 (1st Cir. 2022) ("*MIT*").

District courts have "broad discretion to quantify the need for anonymity … [and] whether that need outweighs the public's transparency interest." *Id*. at 72. The party seeking pseudonymity bears the burden of rebutting the presumption against it, and "the balance between a party's need for anonymity and the interests weighing in favor of open judicial proceedings may change as the litigation progresses." *Id.* at 73 (quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000)).

The Court need find that Individual Plaintiffs fall into only one of these categories. But Plaintiffs here fall into all four, and they warrant a grant of pseudonymity.

**A. Pseudonymity is necessary because Individual Plaintiffs face unusually severe harm.**

Individual Plaintiffs face severe physical and psychological harm if their identities are exposed. As refugees who have not yet obtained lawful permanent resident status, they are the targets of sweeping policies to pause adjudication of their applications for adjustment of status, re-vet their refugee cases, terminate their refugee status, detain, and deport them. Individual Plaintiffs are lawfully admitted refugees with pending applications for adjustment of status. Declaration of

Lida A. ¶¶ 4, 6;[2] Declaration of Abdi B. ¶¶ 3, 11; Declaration of Julio C. ¶¶ 3, 5; Declaration of Firas D. ¶¶ 6, 9. They and their families have reason to fear that revealing information about their immigration status will render them immediate, obvious targets for immigration enforcement actions by the U.S. government, including increased surveillance and targeting of family members, termination of refugee status, potential arrest or re-arrest, detention, and deportation solely because they have chosen to challenge the U.S. government's refugee re-vetting and termination policies. *See* Lida A. Decl. ¶ 12; Abdi B. Decl. ¶ 15; Julio C. Decl. ¶ 7; Firas D. Decl. ¶ 17. Further, public disclosure of their participation in this lawsuit could lead ICE to seek them out for arrest or detention or lead DHS to other adverse action against them, such as denying pending applications for pretextual or other improper reasons.

The "danger of retaliation" is a "compelling ground" to allow the use of a pseudonym, particularly where plaintiffs challenge government action. *See Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008). Courts across the country have permitted pseudonymity where individuals seek to vindicate rights against the government, particularly where disclosure could expose them to retaliatory or coercive conduct by the very authorities whose actions are being challenged. *See, e.g.*, *Hisp. Interest Coal. of Ala. v. Governor of Ala.*, 691 F.3d 1236, 1247 (11th Cir. 2012); *Lozano v. City of Hazleton*, 620 F.3d 170, 195 (3d Cir. 2010), *vacated on other grounds*, 563 U.S. 1030 (2011).

And Individual Plaintiffs' fears are not speculative. As one court explained, "the news is replete with reports of deportations, and the defendants have not assured the plaintiffs they will not retaliate against them." *CASA, Inc. v. Trump*, 793 F. Supp. 3d 703, 726 (D. Md. 2025); *see also Ozturk v. Trump*, 777 F. Supp. 3d 26, 29 (D. Mass. 2025). Other courts have specifically noted the risks of "retaliatory arrest, deportation, or other adverse immigration actions" when noncitizens publicly litigate against the government. *Does 1–158 v. Rubio*, No. 25-3032, 2025 WL 2709775, at *2 (D.D.C. Sept. 23, 2025); *Doe #1 v. Noem*, No. 25-cv-317, 2025 WL 1207190, at *1 (W.D.

[2] All declarations are attached to the Declaration of Erez Reuveni, Dkt. 2.

Wis. Apr. 25, 2025) (recognizing "imminent arrest and detention" and "the possibility of being deported to a country other than their country of origin"). Courts have further observed that high-profile immigration litigants have faced abuse, intimidation, and harassment by private actors. *See Molina v. DHS,* No. 25-3417, 2025 WL 2800807, at *1 (D.D.C. Oct. 1, 2025) (granting motion to proceed under pseudonyms where "Plaintiffs' participation in this litigation implicates their asylum applications and immigration statuses during a period of intense public scrutiny of immigration matters"). Accordingly, many courts have granted anonymity to noncitizens suing the government to protect against "harassment, intimidation, and/or doxing." *See, e.g.*, Order, *Jean A. v. Noem*, No. 3:26-cv-30031 (D. Mass. Mar. 23, 2026), Dkt. 52; *Doe v. Noem*, No. 2:25-cv-00633, 2025 WL 1295664, at *3 (W.D. Wash. May 5, 2025); *Doe 1 v. Noem*, No. 2:25-cv-00663, 2025 WL 1434925 (W.D. Wash. May 19, 2025); *Int'l Refugee Assistance Project v. Trump*, No. CV 17-0361, 2017 WL 818255 (D. Md. Mar. 1, 2017).

Additionally, the threat to Plaintiffs is not limited to the United States. All fled their countries of nationality due to persecution, and making public the fact that they sought refuge in the United States would only make them more of a target upon their return should the government succeed in stripping them of their lawful status and deporting them. Lida A. Decl. ¶¶ 2-3, 9; Abdi B. Decl. ¶¶ 4, 13; Julio C. Decl. ¶¶ 2, 5; Firas D. Decl. ¶¶ 4, 16. Courts consistently grant pseudonymity on the basis of a well-founded fear of violence in another country. *See, e.g.*, *Doe v. U.S. Sec'y of State,* 707 F. Supp. 3d 142 (D. Mass. 2023) (fear of harm from persecutors in home country merited grant of pseudonymity); *Doe v. Gonzales*, 484 F.3d 445, 446 (7th Cir. 2007) (fear of retaliation in home country sufficient to allow petitioner to litigate with a pseudonym); *Advanced Textile Corp.*, 214 F.3d at 1067-69 (recognizing that potential retaliation against family members abroad supported pseudonymity); *Doe v. INS*, 867 F.2d 285, 286 n.1 (6th Cir. 1989) (allowing pseudonymity to protect family abroad from retaliation).

Plaintiffs thus merit pseudonymity under the first paradigm identified in *MIT*, 46 F.4th at 71.

**B. Identifying Plaintiffs would expose innocent non-parties to severe harm.**

Publicly identifying Individual Plaintiffs will compound the "risk of retaliatory physical or mental harm" to their families, including minor children, who are "innocent non-parties." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). For example, Plaintiff Abdi B. arrived in the United States with his wife and young child. *See* Abdi B. Decl. ¶ 3.

Exposure of Individual Plaintiffs to retaliatory harm necessarily exposes their family members. The loss of a principal family member's refugee status causes their spouse and children to lose status as well. 8 U.S.C. § 1157(c)(4); 8 C.F.R. § 207.9. A decision to deny adjustment of status to any refugee will expose other family members identified through the refugee's adjustment application. And detention of one family member for any length of time causes significant harm to family members who lose companionship, income, and support. Abdi B. Decl. ¶¶ 9, 12. This harm can be severe for minor children. *Id.*

Individual Plaintiffs thus merit pseudonymity under the second paradigm identified in *MIT*, 46 F.4th at 71.

**C. Identifying Individual Plaintiffs would chill future litigants.**

Plaintiffs bring a challenge to an unprecedented policy of mass re-vetting of refugee cases, freezing of refugee adjustment applications, and termination of refugee status. Their claims raise significant statutory and Due Process concerns. If they are not permitted to stay out of the public eye and protected from exposure, the willingness of refugees and other immigrants to challenge federal government activity in future litigation will unquestionably be chilled.

"Courts should be wary of taking actions that may chill the willingness of a party from bringing constitutional and statutory challenges." *Al Otro Lado, Inc. v. Nielsen,* No. 17-cv-02366, 2017 WL 6541446, at *7 (S.D. Cal. Dec. 20, 2017). This concern is particularly acute here, where the federal government is engaged in a highly publicized re-vetting effort. In similar cases, including in this federal district, courts have affirmed the need for pseudonymity in cases involving noncitizen plaintiffs. Requiring disclosure of their identities "would likely deter similarly situated

individuals from litigating cases ... in which the perceived risk of proceeding without a pseudonym—deportation—is precisely the harm [p]laintiffs seek to prevent by participating in the lawsuit." *Doe v. Noem*, No. 1:25-cv-10495, 2025 WL 990635, at *2 (D. Mass. Apr. 2, 2025) (Talwani, J.); *see also Lozano*, 620 F.3d at 195.

Plaintiffs thus merit pseudonymity under the third paradigm identified in *MIT*, 46 F.4th at 71.

**D. Public identification would expose information protected by law.**

Public identification would reveal information of a highly sensitive and personal nature: Plaintiffs' refugee statuses and histories of forced displacement. Immigration law already treats this information as confidential. DHS's own implementing regulations automatically protect refugee confidentiality and recognize and seek to mitigate the serious risks refugees face if their identities are made public. *See* 8 C.F.R. § 208.6(a)–(b). DHS recognizes that confidentiality is necessary to "safeguard information that, if disclosed publicly, could subject the claimant to retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members." *Anim v. Mukasey,* 535 F.3d 243, 253 (4th Cir. 2008) (quoting *USCIS Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants* (2005)); *see Refugee & Immigr. Ctr. for Educ. & Leg. Servs. v. Noem*, No. 25-cv-0306, 2025 WL 579648, at *2 (D.D.C. Feb. 20, 2025). And courts routinely grant pseudonyms where the identities of litigants have already been protected in other legal proceedings. *See, e.g.*, *Doe v. Town of Lisbon*, 78 F.4th 38, 47 (1st Cir. 2023) (protecting identity of officer whose identity was made confidential in state proceeding); *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 371 (S.D.N.Y. 2019) (granting pseudonymity to non-minor plaintiffs challenging immigration authorities' denial of "special immigrant juvenile" status due to family court adjudications, in part because "related records from the New York Family Courts are protected by law").

The presumption of necessary confidentiality has particular force here, where Individual Plaintiffs have already been granted refugee status by the U.S. government in recognition of the persecution they or their family members faced or were likely to face in their countries of nationality. The Complaint reveals this information, as well as the fact that Plaintiffs and others similarly situated, risk denial of the adjustment of status applications, attempts to terminate their refugee status, and possible arrest, detention, and deportation.

Individual Plaintiffs thus merit pseudonymity under the fourth paradigm identified in *MIT*, 46 F.4th at 71.

**II. Pseudonymity poses no threat of unfairness to Defendants.**

Allowing Individual Plaintiffs to proceed pseudonymously will not prejudice Defendants or compromise fundamental fairness. Plaintiffs' specific identities are not relevant to any of the issues in this case, which challenges broadly applicable government policies. Plaintiffs will share their true identities confidentially with Defendants' attorneys and others whom the Court finds are necessary for the just resolution of this litigation, subject to an appropriate protective order.

Individual Plaintiffs' Motion requests anonymity only to shield sensitive information from the public and Defendants themselves, as well as any officials, employees, agents, contractors, or representatives of USCIS, DHS (including any DHS component such as ICE), or any other federal entities involved in immigration enforcement, investigation, detention, or related actions. Defendants will be able to litigate at every stage of this action without impediment. There is no prejudice to Defendants that would countervail the need for Plaintiffs' anonymity.

**III. The public interest is fully served without disclosure of Plaintiffs' identities.**

The public interest is fully served without disclosure of Plaintiffs' names. "[L]awsuits that enforce constitutional and statutory rights benefit the public." *Al Otro Lado, Inc.*, 2017 WL 6541446, at *7. "Indeed, the public has an interest in such cases being decided on the merits." *Id.* (citing *Advanced Textile Corp.*, 214 F.3d at 1073).

Individual Plaintiffs' identities are incidental to their claims, which challenge the legality of government policies concerning lawfully admitted refugees, not the credibility or personal circumstances of any particular Individual Plaintiff. If the Court grants this motion, the public still will have access to the parties' legal arguments, the factual allegations, and the Court's rulings. *Sealed Plaintiff*, 537 F.3d at 190 ("[B]ecause of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities." (cleaned up)); *Beilarus1 v. Mayorkas*, No. 24-cv-01925, 2025 WL 104387, at *2 (W.D. Wash. Jan. 15, 2025) (finding public interest weighed in favor of allowing asylum applicants to proceed anonymously where the central issues raised in the case was a legal challenge to the delayed adjudication of asylum applications).

Requiring disclosure of Individual Plaintiffs' identities in this context would ultimately deter, not advance, the public interest. If Individual Plaintiffs were required to proceed under their full names, the message to others similarly situated would be unmistakable: speaking up comes at an enormous personal cost. That outcome would deter the very individuals most affected by unlawful government action from seeking judicial review, insulating such conduct from meaningful challenge. Requiring disclosure in these circumstances would undermine the public interest—particularly where, as here, Individual Plaintiffs seek to vindicate their own rights and those of similarly situated refugees with no realistic alternative means of redress.

There is thus no risk that "disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case." *Advanced Textile Corp.*, 214 F.3d at 1072; *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1043 (9th Cir. 2010) ("it is difficult to see how disguising plaintiffs' identities will obstruct public scrutiny of the important issues in this case." (cleaned up)). In short, "any public interest in disclosing the identity of the plaintiff is significantly outweighed by the threat of retaliation that public disclosure of the plaintiffs' identities might entail." *O.M.G. v. Wolf*, No. 20-cv-786, 2020 WL 12956895, at *2 (D.D.C. Mar. 23, 2020). Indeed, the public interest is served by permitting this case to go forward with appropriate protections for

Plaintiffs. *See Gonzalez v. Gor*, 802 F. Supp. 3d 368, 389 (D.P.R. 2025) (holding a strong public interest exists in ensuring government institutions "operate[] within the confines of the law").

## CONCLUSION

In light of the substantial risks that Individual Plaintiffs face and the minimal value to the public of their identities, the balance of interests and the totality of the circumstances weigh overwhelmingly in favor of allowing Individual Plaintiffs to proceed under pseudonyms. Safeguarding their names from disclosure is necessary to ensure that Individual Plaintiffs can safely bring this case without further endangering themselves and their families.

Dated: October 26, 2026

Respectfully submitted,


Hussein Elbakri* (NY Bar No. 5712666)
Guadalupe Aguirre* (NY Bar 5536107)
Kimberly Grano* (NY Bar No. 5858808)
Ghita Schwarz* (NY Bar No. 3030087)
Pedro Sepulveda* (NY Bar No. 6198550)

**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
One Battery Plaza, 33rd floor
New York, New York 10004
Telephone: (646) 939-9169
Facsimile: (516) 324-2267
helbakri@refugeerights.org
laguirre@refugeerights.org
kgrano@refugeerights.org
gschwarz@refugeerights.org
psepulveda@refugeerights.org

Dalia Fuleihan* (IL Bar No. 6335082)
**INTERNATIONAL REFUGEE ASSISTANCE PROJECT**
P.O. Box 47611
Chicago, IL 60647
Telephone: (646) 740-6271
Facsimile: (516) 324-2267
dfuleihan@refugeerights.org

*/s/ Erez Reuveni*
Erez Reuveni (MA BBO No. 666769)
Jennie L. Kneedler* (DC Bar No. 500261)
Cynthia Liao* (DC Bar No. 90036947)
Steven Y. Bressler* (DC Bar No. 482492)
Robin F. Thurston* (DC Bar No. 1531399)
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, DC 20043
Phone: (202) 448-9090
ereuveni@democracyforward.org
jkneedler@democracyforward.org
cliao@democracyforward.org
sbressler@democracyforward.org
rthurston@democracyforward.org

John Nathanson (NY Bar No. 2630697)*
Andrew Tannenbaum (NY Bar No. 3940434)*
Leila Siddiky (NY Bar No. 5225164)*
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Avenue
New York, NY 10022
212-848-4000
john.nathanson@aoshearman.com
andrew.tannenbaum@aoshearman.com
leila.siddiky@aoshearman.com

Emily Westridge Black (TX Bar No. 24060815)*
**ALLEN OVERY SHEARMAN STERLING US LLP**
300 West 6th Street
Austin, TX 78701
512-647-1909
emily.westridgeblack@aoshearman.com

Gideon J. Duke-Cohan (MA BBO# 716358)
**ALLEN OVERY SHEARMAN STERLING US LLP**
One Beacon Street
Boston, MA 02108
212-610-6353
gideon.duke-cohan@aoshearman.com

*Counsel for All Plaintiffs*

* Motion to appear *pro hac vice* forthcoming

**CERTIFICATE OF SERVICE**

I certify that, on October 26, 2026, I emailed the foregoing to:

August Flentje
Deputy Director
U.S. Department of Justice, Civil Division, Office of Immigration Litigation
august.flentje@usdoj.gov

Papu Sandhu
Acting Senior Counsel for District Court Litigation
U.S. Department of Justice, Civil Division, Office of Immigration Litigation
Papu.Sandhu@usdoj.gov

Rayford Farquhar
Chief, Defensive Litigation, Civil Division
U.S. Attorney's Office for the District of Massachusetts
rayford.farquhar@usdoj.gov

I also caused the foregoing to be served on the U.S. Attorney's Office for the District of Massachusetts by courier and certified priority mail and to be served on Defendants and the Attorney General by certified priority mail.

*/s/ Erez Reuveni*
Erez Reuveni