**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PARTNERSHIP FOR THE ADVANCEMENT OF NEW AMERICANS, et al.,<br><br>Plaintiffs,<br>v.<br><br>JOSEPH B. EDLOW, et al.,<br><br>Defendants. | Civil Action No. 1:26-cv-14817-MJJ |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF COUNSEL**

Defendants, by and through their counsel Leah B. Foley, United States Attorney for the District of Massachusetts, submit their Memorandum in Opposition to Plaintiffs' Motion for Class Certification and Appointment of Class Counsel ("Motion for Class Cert.") (ECF Doc. No. 17 & 18).

## INTRODUCTION

Plaintiffs' motion to certify a class consisting of "all individuals admitted to the United States as refugees under 8 U.S.C. § 1157 who have not adjusted to lawful permanent resident status as of and after October 14, 2026" should be denied. (ECF No. 18 at 6).

The Court should deny the Motion for Class Certification. Plaintiffs lack Article III standing. Furthermore, Plaintiffs have failed to meet the requirements of Rule 23. The purported class definition is overbroad, and Plaintiffs have not met their burden of showing commonality or typicality. Finally, the putative class is not certifiable under Rule 23(b)(2).

## BACKGROUND

A "refugee" is generally defined as any person outside their country of nationality who is unable or unwilling to return due to persecution or a well-founded fear of persecution based on race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42). When a refugee is admitted into the United States, that admission is conditional. After the refugee has been present in the United States for one year, he or she must "return or be returned" to Department custody and be re-vetted for "inspection and admission" as a lawful permanent resident. 8 U.S.C. § 1159(a). Every admitted refugee "is required to apply to United States Citizenship and Immigration Services ("USCIS") one year after entry in order for USCIS to determine his or admissibility. . . ." 8 C.F.R § 209.1(a). This application must be submitted in accordance with applicable form instructions, and the relevant application is a Form I-485.

An individual with refugee status may have his or her status terminated if USCIS determines that the alien did not meet the definition of a refugee at the time of admission to the United States. 8 U.S.C. § 1157(c)(4). Prior to termination USCIS issues a Notice of Intent to Terminate ("NOIT") prior to termination. 8 CFR § 207.9. In the NOIT, USCIS outlines the specific basis or bases for the termination, such as a determination by USCIS that the harm the alien experienced or feared was not on account of a protected ground or, for example, that the alien had another nationality or legal status in another country such that they did not qualify as a refugee from the claimed country. 91 Fed. Reg. 65,081. The NOIT further informs the alien of his or her right to offer written or oral evidence in support of his or her refugee claim and in opposition to the proposed termination. *Id.* Finally, the NOIT states that if USCIS determines that the alien was not a refugee within the meaning of section 101(a)(42) of the INA, 8 U.S.C. § 1101(a)(42), at the time of admission, his or her refugee status and employment authorization will be terminated, and

he or she will be subject to removal from the United States. *Id.* Finally, the NOIT states that if USCIS determines that the alien was not a refugee within the meaning of section 101(a)(42) of the INA, 8 U.S.C. § 1101(a)(42), the time of admission, his or her refugee status and employment authorization will be terminated, and he or she will be subject to removal from the United States. *Id.* Upon termination USCIS processes the alien for removal under sections 235, 240, and 241 of the INA. *Id.*

On January 20, 2025, the President issued Executive order ("EO") 14163, Realigning the United States Refugee Admissions Program ("USRAP") until the admission of refugees aligns with the interest of the United States. ECF No. 1-4. This EO was to ensure public safety and national security were strongly considered in the administration of the USRAP. *Id.* During the evaluation phase to make improvements to the EO, USCIS identified that from January 20, 2021, to February 20, 2025, the USRAP and USCIS potentially prioritized expediency, quantity, and admissions over quality interviews and detailed screening and vetting. *Id.* Given this concern and other detailed findings, on November 21, 2025, USCIS issued a memorandum directing a comprehensive review and a re-interview of all refugees admitted during January 20, 2021, to February 20, 2025. *Id.* The purpose of this USCIS memorandum is to ensure all principal refugees admitted to the United States warranted a favorable exercise of discretion and met the definition of a refugee as describe in Immigration and Nationality Act ("INA") § 101(a)(42) at the time of admission and that all refugees are admissible to the United States. *Id.*

Thereafter and due to concerns with the integrity of the refugee program and the eligibility of refugee status of aliens admitted, USCIS implemented an Interim Final Rule ("IFR") on October 14, 2026, reducing the response period to a NOIT from thirty days to ten days. 91 Fed. Reg. 65,077. Through the IFR, the Department of Homeland Security ("DHS") is amending 8 C.F.R. § 207.9 to

change the 30-day notice-and-response period for aliens whose refugee status is terminated by USCIS to a 10-day notice and response period. *Id.* at 79. The purpose of the IFR is to protect U.S. interests and public safety, allowing USCIS to act quickly when the Department of Homeland Security ("DHS") determines that an alien did not meet the refugee definition and was not entitled to refugee status at the time of admission. *Id.* at 78. Specifically, to further restore the integrity of the refugee program and protect against risks to national security and public safety. *Id.* The IFR was implemented following investigations which revealed fraud, refugees later identified as members of armed groups or had concealed extremist affiliations, and refugees not entitled to immigration benefits. *Id.* at 78-83.

## LEGAL STANDARD

A class action is an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotations omitted). To justify such departure, proposed class representatives must possess the same interest and same injury as the class members. *See id.* "[A] party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23" and "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required[.]" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Dukes*, 564 U.S. at 350) (emphasis in original).

A party seeking certification of a proposed class must demonstrate the existence of the four required elements set forth in Rule 23(a) of the Federal Rules of Civil Procedure. Specifically, the moving part must show that:

(1) the class is so numerous that joinder of all members is impracticable ("numerosity");

(2) there are questions of law or fact common to the class ("commonality);

(3) the claims or defenses of the named plaintiffs are typical of claims or defenses of the class (“typicality”); and

(4) the named plaintiffs will fairly and adequately protect the interests of the class (“adequacy of representation”).

*See* Fed. R. Civ. P. 23(a); *see also Dukes,* at 345.

In addition to satisfying these Rule 23(a) prerequisites, a plaintiff must demonstrate that the action fits within at least one of the categories in Rule 23(b). *See* Fed. R. Civ. P. 23(b)(1)-(3). Here, Plaintiffs seek certification under Rule 23(b)(2), which requires the movant to show that “the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.” Fed. R. Civ. P. 23(b)(2). Courts must rigorously analyze Rule 23’s requirements, *Dukes*, 564 U.S. at 350-51, which requires more than accepting Plaintiffs’ claims as pleaded. *See Eddlemon v. Bradley Univ.*, 65 F.4th 335, 338-39 (7th Cir. 2023). Plaintiffs “must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23,” otherwise certification must be denied. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014).

Even if the action conforms to Rule 23, the Court retains “broad discretion” to determine whether it should certify the proposed class. *Zinser*, 253 F.3d at 1186. The Court may “probe behind the pleadings before coming to rest on the certification question.” *Gen. Tel. Co.,* 457 U.S. at 160. This is because “the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff’s cause of action.” *Id.* (internal quotation omitted). Nevertheless, the ultimate decision regarding class certification must

necessarily "involve[] a significant element of discretion." *Yokoyama v. Midland Nat'l Life Ins. Co.,* 594 F.3d 1087, 1090 (9th Cir. 2010).

**I. Article III Standing is Absent**

Plaintiffs' have failed to show that all members of their putative class, which is defined as: "All individuals admitted to the United States as refugees under 8 U.S.C. § 1157 who have not adjusted to lawful permanent resident status as of and after October 14, 2026." (ECF No. 18 at 6), have Article III standing. Article III, Section 2 of the Constitution requires that a party have standing to maintain an action in federal court. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296 (2022). And when seeking prospective relief, like here, a plaintiff must demonstrate a "risk of harm [that] is sufficiently imminent and substantial." *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 375 (1st Cir. 2023) (internal quotations omitted). Class action lawsuits are no different. *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotations omitted); *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *In re. Boston Scientific Corp. Erisa Litigation*, 254 F.R.D. 24, 28 (D. Mass. 2008).

Plaintiffs' do not meet their burden. There is no evidence of actual or imminent harm. Plaintiff Lida A. fears she will receive a NOIT without enough time to respond. ECF No. 18 at 12. The fear is based on a hypothetical. Plaintiff Abdi B. lost SNAP benefits as a result of the One Big Beautiful Bill Act. ECF No. 18 at 12. The loss of SNAP benefits is not a result of the IFR or the adjustment of status hold. Delay is an inconvenience, not harm, when attempting to gain immigration benefits. Plaintiff Julio C. fears losing Medicaid and would not have enough time to

respond to the NOIT. ECF No. 18 at 13-14. Again, this is a hypothetical regarding the NOIT. The IFR and adjustment of status hold does not terminate Medicaid. Furthermore, loss of financial or similar assistance does not equal loss of access to medication, food, or other necessities to individuals. Plaintiff Firas D. would like to become a pilot, but cannot until his status has been adjudicated. ECF No. 18 at 14. One cannot argue this is harm. Furthermore, he fears arrest and detention if his work permit expires before his application is adjudicated. ECF No. 18 at 14. This is another hypothetical. There is no threat of harm or injury, let alone imminent, based on the IFR or USCIS memorandum.

The Court should not certify, given the Article III requirements, the requested class. *See Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) ("In order for a class to be certified, each member must have standing and show an injury in fact that is traceable to the defendant and likely to be redressed in a favorable decision.").

**II. Plaintiffs' Have Not Satisfied the Requirements for Class Certification.**

**A. The Proposed Class is Overbroad and Lacks Commonality and Typicality.**

Under Rule 23, a class must be defined clearly. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660; *cf. Ad Hoc Comm. on Jud. Admin. v. Com. of Mass.*, 488 F.2d 1241, 1243 n.1 (1st Cir. 1973) (noting problems with vaguely-defined and broad classes). Having an inadequately defined or overbroad class often invokes multiple Rule 23 requirements, including typicality, commonality, and the standards for certifying an injunctive-relief class under Rule 23(b)(2). The commonality and typicality requirements of Rule 23(a) are interrelated and, in some instances,

merge. *Dukes,* 564 U.S. at 350. In this case, the proposed classes fail to meet the typicality requirement for the same reasons that they fail the commonality requirement.

The Supreme Court has cautioned that the commonality language in Rule 23 "is easy to misread, since any competently crafted class complaint literally raises common questions." *Midland Nat'l Life Ins. Co.,* 594 F.3d 1090. In this regard, "what matters . . . is not the raising of common 'questions' – even in droves – but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009)). Thus, although "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to establish commonality]," *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1996), commonality cannot be established where there is variation requiring individual adjudications of each class member's claims. *Nguyen Da Yen v. Kissinger,* 70 F.R.D. 656, 663-64 (N.D. Cal. 1976). Indeed, "[d]issimilarities within the proposed class are what have the potential to impede the generation of common answers." *Duke,* 564 U.S. at 350 (internal quotations omitted).

Differences among the class members' claims to relief prevent a finding of commonality or typicality. Rule 23(a)(2) requires questions of law or fact common to the class. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered *the same injury*.'" *Dukes*, 564 U.S. at 350 (citation omitted). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Instead, the "claims must depend upon a common contention" that "is capable of classwide resolution—which means that [the] determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Rule 23(a)(2) "is

easy to misread, since [a]ny competently crafted class complaint literally raises common questions." *Dukes*, 564 U.S. at 349, 351 (citation and quotes omitted). "What matters to class certification . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350.

Here, Plaintiffs claim that the members of the class have all "faced the same injuries: the indefinite suspension of adjustment of status, exposure to categorical re-vetting, and the deprivation of a meaningful opportunity to respond to a NOIT before termination of refugee status." ECF No. 18 at 20. Plaintiffs' claim the class shares legal and factual issues, including, (1) whether the Adjustment of Status Hold and the Re-vetting Policy exceed Defendants' statutory authority and are contrary to law; (2) whether the Adjustment of Status Hold, the Re-vetting Policy, and the IFR are arbitrary and capricious under the APA; (3) whether the Adjustment of Status Hold, the Re-vetting Policy, and the IFR are invalid because they are legislative rules and DHS did not go through notice and comment procedures before implementing them, violating the APA; and (4) whether the Adjustment of Status Hold and IFR violate the Fifth Amendment to the U.S. Constitution. *Id.,* at 13.

However, the class is so overbroad it is an impossibility to know who would fall under such class. This is further highlighted by the Plaintiffs themselves. "The parties may propose a more specific [class] definition at a later stage in this case, at which point the Court may modify the class definition." *Guerrero Orellana v. Moni,*. 808 F. Supp. 3d 167, 183 (D. Mass. 2020); ECF No. 18 at 6, fn 1 (Proposed Class). Plaintiffs' cannot provide a way to determine if all members applied for adjustment of status, wish to apply for adjustment of status, withdrew their application for adjustment of status, or importantly, individuals who automatically become members simply

for filing an application for adjustment of status after October 14, 2026. The Plaintiffs' also cannot determine who may be eligible for adjustment of status regardless of their refugee status. Adjustment of status is a discretionary benefit within § 1255. Simply having refugee status and filing an application for adjustment of status does not guarantee the application will be approved. There are discretionary factors involved, for example, criminal history, grounds of inadmissibility, or if an individual is ineligible for a waiver.

Additionally, the class is overbroad in the sense it states, "All" individuals admitted to the United States as refugees under 8 U.S.C. § 1157 who have not adjusted to lawful permanent resident status as of and after October 14, 2026. ECF No. 18 at 6. However, Plaintiffs are challenging a USCIS memorandum which details refugees admitted between January 20, 2021, and February 20, 2025, for a review and potential re-interview. ECF No. 18 at 10. Plaintiffs' seek to include individuals in a class outside of the claimed, challenged USCIS memorandum. This class may include individuals who have applications pending before 2021. Plaintiffs' also challenge the IFR, which changes a response time to a NOIT. The proposed class is attempting to include individuals who DHS is properly terminating refugee status, regardless if the response time to a NOIT is 30 days or 10 days.

Likewise, for the reasons set forth above, Plaintiffs have failed to meet the typicality requirement under Rule 23(a)(3), that is, that the proposed class representatives have the same claims and defenses of the other members of the class.

**B. Certification is Not Warranted Under 23(b)(2)**

For the reasons detailed above, the Court should reject Plaintiffs' effort to satisfy Rule 23(b)(2). Rule 23(b)(2) provides that a class action can be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive

relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes,* 564 U.S. at 360 (internal quotations and citation omitted). Stated otherwise, "if the proposed class includes members who are not at risk of injury based on the [IFR and adjustment hold] then injunctive relief sought on behalf of the class as a whole under Rule 23(b)(2) would be inappropriate." *Greater Chautauqua Federal Credit Union v. Quattrone,* No. 22 Civ. 2753 (MKV), 2025 WL 869279, a 12 (S.D.N.Y. Mar. 20, 2025); *see also Brown v. Kelly,* 609 F.3d 467, 482 (2d Cir. 2010) (denying Rule 23(b)(2) statewide class certification because the proposed definition includes members who are not at risk of injury by the defendant). Therefore, the Court must take into consideration whether the relief sought "is proper for each and every member of the group." *Berni v. Barilla S.p.A.,* 964 F.3d 141, 146 (2d Cir. 2020). There is no harm to the Plaintiffs based on the delay in adjudication and a quicker response time to a NOIT. There also may be members who are re-interviewed in the very near future and adjust status soon thereafter. In other words, potential class members who never had a delay. The proposed class would include these individuals, which is improper.

Indivisibility is not present in the instant matter. Given the overbroad class definition, this Court would have to engage in individualized "mini-trials" just to determine which putative class members if any were actually facing a concrete, imminent threat of harm that justifies an injunction—a proposition that is fatal to (b)(2) certification. *See Harris v. Union Pac. R.R. Co*., 953 F.3d 1030, 1038 (8th Cir. 2020). As a result, a court will be unable to adjudicate the claims in a class-wide manner, and Rule 23(b)(2) certification is unwarranted.

WHEREFORE, for the reasons set forth herein, the Court should deny the Motion for Class Certification.

Dated: November 16, 2026

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: *[/s/ Vincent Engingro III]*
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
Tel.: 617-748-3100
Email: Vincent.engingro@usdoj.gov

## CERTIFICATE OF SERVICE

I, Vincent Engingro III, Assistant United States Attorney, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Paper copies will be sent to those indicated as non-registered participants.

Dated: November 16, 2026

By: */s/ Vincent Engingro III*
Assistant United States Attorney